UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNILOY MILACRON INC.                                                                                    PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:06-CV-537-S

PNC BANK, N.A., et al.                                                                                DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the court upon cross motions of the plaintiff, Uniloy Milacron Inc. ("Uniloy"), and defendants PNC Bank, N.A. and PNC Financial Services Group (collectively "PNC Bank" or the "Bank") for partial summary judgment (DNs 31, 32).

**BACKGROUND**

The facts relevant to the motions before the court are not disputed. On October 20, 2005, Uniloy entered into a contract with defendant MAB, LLC ("MAB") to manufacture two plastic bottling machines for MAB's use (the "Contract"). The total price of the machines was $1,320,050. After making a $132,050 down payment on the machines, MAB obtained $800,000 of the outstanding balance of the purchase price from a venture capital firm. MAB remained responsible for the remaining outstanding balance of $388,000.

As a condition to obtaining the venture capital funding, MAB was required to obtain a letter of credit to cover the $388,000 for which it remained responsible. On April 10, 2006, PNC Bank issued a letter of credit to Uniloy on behalf of MAB for $388,000 (the "Letter of Credit"). By its terms, the Letter of Credit was to expire at 5:00 p.m. on July 31, 2006. In order for Uniloy to obtain payment from PNC Bank under the terms of the Letter of Credit, Uniloy was required to present three items to the Bank: *first*, a dated signed certification by an authorized Uniloy representative stating that Uniloy had not received payment from MAB within sixty days of shipment of "1) Uniloy Model UR8X7-7PNE

CBTR Blow Molding Machine Including Molds and Tooling - Serial Number: N01A010088 and 1) Uniloy Model UR6X9-7PNE CBTR Blow Molding Machine Including Molds and Tooling - Serial Number: N01A0100089;" *second*, copies of the unpaid invoices for the merchandise described above; and *third*, a copies of the bills of lading for the merchandise described above evidencing the shipment date.

On May 3, 2006, Uniloy shipped the machines to MAB.  MAB failed to pay the remaining $388,000 of the purchase price and on Friday, July 28, 2006, Uniloy sent a demand for payment under the Letter of Credit to PNC Bank by Federal Express (the "Draw Request").  PNC Bank received the Draw Request on July 31, 2006.  Upon review of the documents submitted by Uniloy, PNC Bank discovered that the signed certification was undated and that the serial number on one invoice was listed as "N01A0100088."  PNC Bank also discovered that the bills of lading contained the following descriptions of the merchandise shipped:

| Customer Order No. 12 | Customer Order No. 13 |
|---|---|
| (1) Uniloy R2000 B.M.M. | (1) Uniloy R2000 B.M.M. |
| S/N  N01A0100089 | S/N N01A0100088 |

At 4:24 p.m. the Bank faxed a "Notice of Discrepancies" to Uniloy stating that it was refusing to honor Uniloy's Draw Request due to discrepancies between the format of the Draw Request and the format required by the Letter of Credit.  Specifically, PNC Bank informed Uniloy that:

(1) the certification of Uniloy's representative was not dated as required by the Letter of Credit;

(2) the serial number shown on one invoice did not match the serial number on the Letter of Credit; and

(3) the description of the merchandise on the bills of lading did not match the description of the merchandise on the Letter of Credit.

On the fax cover sheet, the Bank stated, "We are in the process of contacting the customer to see if they are willing to waive the discrepancies."  The Bank, however, did not attempt to contact MAB

within the 36 minutes remaining before the Letter of Credit expired, nor at any later time. After hearing nothing further from the Bank, Uniloy contacted MAB in an effort to obtain a waiver and on August 2, 2006, after the Letter of Credit had expired, MAB informed the Bank that it was willing to waive the alleged discrepancies in the Draw Request. Additionally, Uniloy submitted a "corrected" Draw Request to the Bank. The Bank, however, refused to extend the Letter of Credit beyond the day of expiration.

Uniloy brought suit against PNC Bank and MAB in October 2006 requesting this court declare that it is entitled to payment from the Bank under the Letter of Credit. Uniloy has asserted multiple claims against the Bank including a claim for declaratory judgment and equitable estoppel.[1] In the declaratory judgment count of its complaint Uniloy alleges that any discrepancies between the Draw Request and Letter of Credit were minor and that PNC Bank has not, and cannot, be prejudiced by these discrepancies. In the equitable estoppel count Uniloy alleges that it relied on the Bank's representation that it would contact MAB to determine if the discrepancies could be waived, and the Bank did not contact, nor had any intention of contacting, MAB. Uniloy, therefore, claims the Bank should be estopped from relying on the discrepancies to refuse its Draw Request.

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct.

---

[1] Uniloy has also asserted additional claims against both PNC Bank and MAB. By agreement of the parties and order of the Magistrate Judge, these additional claims are not currently before the court for summary judgment resolution. Therefore, the court will only address Uniloy's declaratory judgment and equitable estoppel claims.

2505, 2510 (1986).  The dispute must also be genuine.  The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party.  *Id.* at 2510.  The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).  The evidence must be construed in a light most favorable to the party opposing the motion.  *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Three distinct relationships are involved when a commercial transaction takes place by means of a letter of credit: (1) the underlying contract for the purchase and sale of goods between the buyer, in this case MAB, and the seller, in this case Uniloy; (2) the credit agreement between the buyer and the bank, in this case PNC Bank, describing the terms the bank must incorporate into the letter of credit and describing how the bank is to be reimbursed when it pays the seller under the letter of credit; and (3) the actual letter of credit which is the bank's irrevocable promise to pay the seller-beneficiary when the latter presents certain documents that conform with the terms of the letter of credit.  *See Alaska Textile Co., Inc. v. Chase Manhatten Bank, N.A.*, 982 F.2d 813, 815 (2d Cir. 1992).

"The great utility of the letter of credit derives from the fact that these three relationships are utterly independent of one another...." *Id.*  An issuing bank is obligated to honor a demand for payment under a letter of credit when the demand is accompanied by documents which appear on their face to be in accordance with the terms of the letter of credit.  *Id.* (citations omitted).  The bank is so obligated regardless of whether the underlying contract for which the credit was issued has been performed.  *Id.* (citations omitted); *see also Philadelphia Gear Corp. v. Central Bank*, 717 F.2d 230, 235 (5th Cir. 1983) ("[t]he obligations and duties created by the contract between the issuer and the [letter of] credit's beneficiary are completely separate from the underlying transaction, with absolutely no consequence given the underlying transaction unless the [letter of] credit expressly incorporates its terms");

*Courtaulds North America, Inc. v. N.C. Nat. Bank*, 528 F.2d 802, 805 (4th Cir. 1975) ("[a bank's] involvement is altogether separate and apart from the transaction between the buyer and the seller; its duties and liability are governed exclusively by the terms of the letter [of credit], not the terms of the parties' contract with each other.")

The parties disagree as to the standard that a demand for payment is required to meet in order to comply with a letter of credit. PNC contends that a letter of credit must be strictly complied with while Uniloy contends that substantial compliance should suffice. The parties agree, however, that neither Kentucky state courts nor the Sixth Circuit has opined on the standard for compliance under Kentucky law. The parties also agree that the Uniloy's compliance with the Letter of Credit should be viewed in light of the Uniform Customs and Practice for Documentary Credits ("UCP"), a set of rules, standards, and commercial policy promulgated by the International Chamber of Commerce ("ICC") which frequently governs letters of credit.[2] This court finds that even if Kentucky were to adopt a "strict compliance" standard, Uniloy's Draw Request would satisfy such a standard.

Under the strict compliance standard, courts have held that documents presented in connection with a demand for payment that are "nearly the same" as required by the letter of credit will not suffice. *See Ocean Rig ASA v. Safra Nat. Bank of New York*, 72 F.Supp.2d 193, 199 (S.D.N.Y. 1999) (citing *Marino Industries v. Chase Manhattan Bank*, N.A., 686 F.2d 112, 114-15 (2d Cir.1982); *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 464-65 (2d Cir.1970)). However, even under the strict compliance standard, nonmeaningful errors, such as obvious typographical errors, will not justify a bank's refusal to honor a letter of credit. *Id.* Additionally, under the strict compliance standard, discrepancies between the demand for payment and the terms of the letter of credit will also not justify

---

[2] The UCP is not law, but where parties explicitly refer to the UCP in a letter of credit, as in this case, the UCP has been interpreted to be applicable. *See Voest-Alpine Trading USA Corp. v. Bank of China*, 167 F.Supp.2d 940, 944 (S.D.Tex. 2000).

a bank's refusal to honor the letter of credit when there is no possibility that the bank could have been misled by the discrepancies to its detriment. *Tosco Corp. v. Federal Deposit Ins. Corp.*, 723 F.2d 1242, 1248 (6th Cir. 1983); *see also Flagship Cruises, Ltd. v. New England Merchants Nat'l Bank of Boston*, 569 F.2d 699, 705 (1st Cir. 1978).

The UCP provides that upon receipt of a demand for payment under a letter of credit a bank "must determine on the basis of the documents [presented in the demand] alone whether or not they appear on their face to be in compliance with the terms and conditions of the [letter of] [c]redit." International Chamber of Commerce, ICC Uniform Customs and Practice for Documentary Credits, ICC Publication 500. "[D]ocuments which appear on their face to be inconsistent with one another will be considered as not appearing on their face to be in compliance with the terms and conditions of the [letter of] [c]redit." *Id.* Courts interpreting the UCP have held that individual documents presented in a demand for payment must be viewed in light of all documents presented in order to determine whether the documents obviously relate to the same transaction. *Voest-Alpine Trading USA Corp. v. Bank of China*, 167 F.Supp.2d 940, 947 (S.D.Tex. 2000).

In the instant case, the court finds that the documents presented by Uniloy in its Draw Request obviously relate to the same transaction, and that there is no possibility that PNC Bank could have been misled by the discrepancies between the presented documents and the Letter of Credit. Thus, even under the strict compliance standard, the discrepancies which the Bank relied upon to refuse Uniloy's Draw Request did not justify such refusal.

With respect to the undated signed certification presented by Uniloy, PNC Bank argues that inasmuch as the Letter of Credit only authorized Uniloy to obtain payment from the Bank if MAB failed to make payment to Uniloy within sixty days of shipment of the machines, the absence of a date on the certification could have drawn its validity into question. We disagree. Although, the certification presented by Uniloy in its Draw Request was undated, the cover letter attached to the Draw Request was

dated July 28, 2006. The cover letter expressly referred to the Letter of Credit and was signed by the same Uniloy representative that signed the certification. Clearly, PNC Bank could not have been misled by the absence of a date on the signed certification. Accordingly, the undated certification does not justify the Bank's refusal to honor Uniloy's Draw Request.

With respect to the discrepancy between the serial number on one of the invoices and the serial number on the Letter of Credit, a mere examination of the entire face of the invoice makes it clear that PNC Bank could not have been misled by the discrepancy. The serial number at issue was listed on the Letter of Credit as "N01A010088." Invoice number 423-X-152 listed the serial number as "N01A0100088."[3] Absent additional evidence, the differing serial numbers could possibly be viewed as having the potential to mislead the Bank. However, invoice number 423-X-152 also contained a description of the merchandise identified by serial number "N01A0100088." The description of the merchandise in the invoice was identical to the description of the merchandise in the Letter of Credit. Given that the serial numbers differed by one "0" and that the merchandise description was identical, the court finds that the differing serial numbers were the product of an obvious typographical error. Such a discrepancy does not justify the Bank's refusal to honor Uniloy's Draw Request.

With respect to the discrepancy between the merchandise descriptions on the bills of lading and the Letter of Credit, when the bills of lading are viewed in light of the additional documents presented by Uniloy this discrepancy also cannot be said to have had the potential to mislead the Bank. The court agrees with PNC Bank insofar as the description of the merchandise in the bills of lading, "Uniloy R2000 B.M.M," is not the same as the description in the Letter of Credit, "Uniloy Model UR6X9-7PNECBTR Blow Molding Machine" or "Uniloy Model UR8X7-7PNECBTR Blow Molding Machine." However, although the description of the merchandise on the bills of lading differs from the description of the

---

[3] The court also notes that the bill of lading presented by Uniloy that corresponds with the Invoice number 423-X-152 also lists the serial number as "N01A0100088."

- 7 -

merchandise on the Letter of Credit, the serial numbers on the bills of lading match the serial numbers on the Letter of Credit.[4] Moreover, the serial numbers on the bills of lading also match the serial numbers on the invoices. The bills of lading and the invoices clearly relate to the same transaction.[5] Such invoices contain a merchandise description identical to the merchandise description in the Letter of Credit. Given that the bills of lading, when viewed in light of the invoices, clearly relate to MAB's purchase of one "Uniloy Model UR8X7-7PNE CBTR Blow Molding Machine" and one "Uniloy Model UR6X9-7PNE CBTR Blow Molding Machine" this court cannot find that the Bank could have been misled based on the discrepancy between the merchandise description on the bills of lading and the Letter of Credit.

For the above stated reasons the court finds that Uniloy's Draw Request was in strict compliance with the Letter of Credit and, therefore, PNC Bank was obligated to honor the Draw Request. Accordingly, the court will grant Uniloy's motion for partial summary judgment as to the declaratory judgment claim. Because we find that Uniloy's Draw Request was in strict compliance with the Letter of Credit and because PNC Bank was obligated to honor the Draw Request, we need not address Uniloy's equitable estoppel claim and will dismiss it as moot.

A separate order will be entered herein this date in accordance with this opinion.

---

[4] With the exception of the typographical error discussed above.

[5] The first invoice is identified with "Invoice No.: 423-X-152" and "Customer Order No.: 13" and the first bill of lading is identified with "Shipper's No. 423-X-152" and "Customer Order No. 13." The second invoice is identified with "Invoice No.: 423-X-153" and "Customer Order No.: 12" and the second bill of lading is identified with "Shipper's No. 423-X-153" and "Customer Order No. 12."